UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KIMBERLY DAWN SOBOLEWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-055 JD |
| | ) |
| NANCY A. BERRYHILL, ACTING COMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| | ) |
| Defendant. | |

**OPINION AND ORDER**

On January 18, 2017, Plaintiff Kimberly Sobolewski filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying her application for disability insurance benefits [DE 1]. The matter is fully briefed and ripe for decision. For the reasons stated below, the Court will remand this matter to the Commissioner for further proceedings.

**FACTS**

Ms. Sobolewski experienced lower back ailments beginning in the fall of 2012, when she first reported to the emergency room with pain in her right lower back radiating down her leg and limited range of motion with tenderness to her lower back. Over the next few months, conservative pain treatment failed to address her problems. On April 2, 2013, Ms. Sobolewski saw Dr. Thomas Ryan for an MRI, which revealed bulging of the annulus fibrosis throughout her lumbar spinal region, disc herniation, and other issues. R. 228.

On May 31, 2013, Ms. Sobolewski applied for disability claiming inability to work due to her ongoing lower back problems. The agency requested that Ms. Sobolewski be seen for a consultative examination, which she did on July 1, 2013, with Dr. J. Smejkal. Dr. Smejkal noted

1

positive upper extremity and neurological findings, but also noted that Ms. Sobolewski had issues with her range of motion, mobility, balancing, standing evenly, and sitting comfortably. R. 330-333. The following day, a DDS consulting physician reviewed Ms. Sobolewski's medical record and found her to have multiple exertional, postural, and environmental limitations in addition to rating her capable to perform sedentary work.[1] R. 81-84. She underwent a discography[2] in August 2013, performed by Dr. Ryan, which revealed multilevel degenerative changes ranging from mild to severe degenerative disc bulging, severe neural foramina stenosis, and advanced facet arthropathy. R. 342, 352-53. Finally, Ms. Sobolewski was admitted for spinal fusion in October 2014 because she had failed conservative therapy. Dr. Ryan performed the surgery, and records indicate that as of January 2015, the fusion was healing well.

On June 19, 2015, the ALJ found that Ms. Sobolewski was limited in her ability to work, but not as severely as alleged and that there were jobs in the national workplace that a person with Ms. Sobolewski's limitations could perform. Accordingly, the Commissioner denied Ms. Sobolewski's claim for benefits.

**STANDARD OF REVIEW**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668,

---

[1] On September 20, 2013, his assessment was reviewed and affirmed on reconsideration by another DDS consulting physician. R. 87-97.

[2] A discography (or "discogram") is an invasive diagnostic procedure used to determine the source of persistent back pain after conservative treatments have failed, whereby a doctor injects dye into spinal disks so that they can better be viewed on an x-ray or CT scan. *See* https://www.mayoclinic.org/tests-procedures/discogram/about/pac-20393818.

673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**DISCUSSION**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met, in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Sobolewski argues primarily that the ALJ failed to base his RFC determination on substantial evidence. She also contends that the ALJ failed to give proper weight to the opinions

of her treating physician, Dr. John Kelly. Lastly, Ms. Sobolewski argues that the ALJ improperly addressed her subjective complaints. The Court need not address Ms. Sobolewski's second and third arguments because the ALJ here failed to consider evidence sufficient enough to provide a necessary "logical bridge" between the record and his conclusions. *Terry*, 580 F.3d at 475.

### A. The ALJ Failed to Base his RFC Determination on Substantial Evidence

Ms. Sobolewski alleges that the ALJ "mischaracterized and ignored relevant evidence in the record" when determining her RFC. [DE 14 at 10] The ALJ found that Ms. Sobolewski has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). R. 24, 29. However, the ALJ gave "additional limitations" no weight because they drew from observations predating Ms. Sobolewski's October 2014 surgery and were "not supported by the evidence in the record." R. 28.

The ALJ did nothing to specify which "additional limitations" he gave no weight to, and he offered no explanation as to why the record did not support any additional limitations. *See Black v. Colvin*, 2015 U.S. Dist. LEXIS 26745, *20 (N.D. Ind. Mar. 3, 2015) ("[O]nce the ALJ found that Plaintiff was more limited than the state agency physician had opined, the ALJ was left with an evidentiary deficit to support his finding" because he did not explain how the remaining record would be determinative of the amount plaintiff could lift.). He completely ignored evidence that might erode the unskilled sedentary base, such as that contained in Dr. Smejkal's July 2013 evaluation of Ms. Sobolewski, where Ms. Sobolewski presented with complaints of scoliosis, degenerative disk disease, and arthritis. R. 330. Dr. Smejkal found that Ms. Sobolewski could not stand up straight and could not do any daily physical tasks. *Id.* Ms. Sobolewski further presented with generalized weakness and poor balance, and she appeared uncomfortable when in the seated and supine positions. R. 331. Dr. Smejkal noted spinous and

paraspinal tenderness in the lumbar region with a decreased range of motion. R. 332. Importantly, Dr. Smejkal found that Ms. Sobolewski could not stoop or squat; she also had a limping gait, could not walk heel to toe tandemly, and could only stand from a seated position with difficulty. R. 333. The ALJ referenced none of these facts when he formed his opinion that Ms. Sobolewski "presented in relatively good condition" prior to October 2014. R. 26. He also failed to elaborate on the results of Ms. Sobolewski's August 2013 discography, performed by Dr. Ryan, which revealed multilevel degenerative changes ranging from mild to severe degenerative disc bulging, severe neural foramina stenosis, and advanced facet arthropathy (to name a few findings). R. 342.

The ALJ likewise mischaracterized Ms. Sobolewski's activities of daily living ("ADL") levels by selectively discussing her capabilities. For example, while the ALJ noted that Ms. Sobolewski was independent in ambulation, bathing, dressing, feeding, grooming, toileting, and transferring at the time of her October 2014 surgery (R. 29), he failed to cite the following ADL deficiencies from that same time: "needs to be accompanied on any shopping trip"; "needs to have meals prepared and served"; "needs help with all home maintenance tasks"; and "all laundry must be done by others."[3]

While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering his decision, the ALJ cannot "cherry-pick" facts that support a finding of

---

[3] On remand, it should be remembered that "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Without acknowledging the differences between the demands of such activities and those of a full-time job, an ALJ is not entitled to use successful performance of life activities as a basis to determine that a claimant's claims of a disabling condition are not credible. *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) ("the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer") (citation omitted).

non-disability while ignoring evidence that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). But that is precisely what the ALJ did in this case. The ALJ's opinion is replete with his reliance only on the facts supporting his ultimate finding that Ms. Sobolewski could perform a full range of sedentary work, without considering significant evidence indicating that Ms. Sobolewski's pre-surgical condition warranted additional limitations.

The ALJ's exclusion of Ms. Sobolewski's inability to stoop or squat, for example, is particularly significant. With respect to the functional limitation concerning the ability to stoop, SSR 96-9p discusses the stooping requirements inherent in sedentary work: An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. Moreover, the regulation indicates that a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply; but, restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. SSR 96-9p. Basically, a person must be able to stoop occasionally in order to perform all sedentary work. *Id*. Moreover, SSR 83-14 defines stooping as "bending the body downward and forward by bending the spine at the waist." That regulation also indicates that in order to perform substantially all of the exertional requirements of most sedentary jobs, a person would need to stoop occasionally (from very little up to one-third of the time, depending on the particular job). SSR 83-14. By failing to consider this finding by Dr. Smejkal, the ALJ picked over a critical fact without explanation in order to craft his RFC and eventual conclusion. This constitutes the very type of cherry-picking *Denton* prohibits. *See* 596 F.3d at 425.

By excluding these key facts supporting Ms. Sobolewski's claim for disability, the ALJ failed to take into account the full extent of her problems and their limiting effects. *See id.* (noting that the ALJ cannot ignore evidence that supports a disability finding). The ALJ's error in this respect requires remand because the ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," based upon all of the relevant evidence in the record, even as to limitations that are not severe. SSR 96-8p. In addition, the RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence." *Id*. The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). However, the ALJ's opinion in this case does not reflect his consideration of the relevant evidence and it fails to provide a logical bridge from the actual evidence to his RFC assessment.

The ALJ downplayed Ms. Sobolewski's condition prior to her October 2014 surgery. But even *if* the ALJ considered the above facts regarding Ms. Sobolewski's condition, his RFC would remain inadequately based on an unsupported assumption that the October 2014 surgery completely addressed (or, in time, will address) Ms. Sobolewski's limitations. Based on his own review of the postsurgical radiology reports, the ALJ opined that "there is no indication the procedures are not healing well." R. 27. The ALJ specifically cited to good alignment of the bone graft, good internal fixation, good incorporation of the bone into the vertebral body, a lack of evidence of implant failure, a pain rating of 3 out of 10, and the fact that Ms. Sobolewski was ambulating well. *Id.* All of these observations were recorded by January 23, 2015, approximately three months after her surgery. Critically however, Ms. Sobolewski's postsurgical range of motion had not been tested by that date. R. 369, 382. The ALJ made no mention of this.

8

By cherry-picking facts from the pre-surgery record, the ALJ essentially determined that Ms. Sobolewski was not disabled prior to her October 2014 procedure; this allowed him to sidestep the need to create a logical bridge from any underlying limitations to the surgery's results. Ms. Sobolewski's vertebrae may have aligned satisfactorily and she may have been ambulating well after her back fusion, but the ALJ on remand must link these postsurgical observations to his RFC determination. He will need to address *how*, if at all, the spinal fusion impacted Ms. Sobolewski's ability to perform the full range of sedentary work. Otherwise, the ALJ will be guilty of "playing doctor" by assessing the overall "success" of Ms. Sobolewski's October 2014 surgery based merely on the fusion's healing and not on any evidence of functional improvement. *See Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (An ALJ may not use his lay opinion to fill evidentiary gaps in the record.).

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Ms. Sobolewski is capable of performing other work (step 5). More accurately stated, in deciding what work Ms. Sobolewski was capable of performing, the ALJ relied on the VE's testimony, which in turn, relied on the ALJ's hypothetical questions that incorporated the inadequately supported RFC determination. The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Ms. Sobolewski's claimed limitations caused by her various back ailments, without even determining whether the October 2014 surgery resolved those issues.[4] *See Young*, 362 F.3d at

---

[4] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing.

1003-05 (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p.

## B. Additional Considerations on Remand

On remand, the Court encourages the ALJ to consider some additional issues. First, it would be incumbent on the ALJ to consider the totality of the evidence when assessing the weight to be afforded to Dr. John Kelly's opinions. The ALJ gave little weight to Dr. Kelly's assessment largely due to its inconsistency with other physicians' reports discussed in the opinion. R. 28-29. But as discussed above, the ALJ's opinion does not fully reflect the record because he cherry-picked facts to support his RFC determination.

Second, the ALJ should not make a credibility determination about Ms. Sobolewski's pain without considering the reasons for her noncompliance with prescriptions. The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] are not entirely credible for the reasons stated in this opinion." R. 26. He supported this credibility determination by pointing to evidence that Ms. Sobolewski was not taking her pain medication as prescribed in October 2014. R. 27. According to the ALJ, this evidence "does not support that the pain is at the disabling levels alleged by the claimant." *Id.* While the ALJ properly cited to medical records, he did not explore any possible reasons as to

---

*O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Ms. Sobolewski's medical records, nor did she indicate in her responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical persons posed by the ALJ, and not on the record itself or the limitations of the claimant herself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

*why* Ms. Sobolewski did not take her medication as prescribed. Indeed, the medical records indicate that Ms. Sobolewski had to take more pain medication than the prescribed amount for it to have a positive effect. R. 253. And at one point, she informed her nurse practitioner that she could not afford her prescribed Lyrica. R. 256. Failure to consider explanations in the record for noncompliance with treatment before discrediting a claimant's pain allegations constitutes error. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with her treatment"); *Craft,* 539 F.3d at 679.

## CONCLUSION

For the reasons stated herein, the Court hereby **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 8, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court